

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
JOHN P. HEHMAN
CLERK

2012 DEC 14 PM 3:24

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff | CASE NO. 2:12-cr-<br><br>JUDGE  Economus<br><br>18 U.S.C. §1344 (Count 1)<br>Bank Fraud |
| v. | |
| LAMAR V. LOVE, Defendant | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### COUNT 1

1. From on or about July 1, 2006, and continuing thereafter until on or about September 29, 2006, the defendant, LAMAR V. LOVE, knowingly devised and intended to devise a scheme and artifice to defraud financial institutions, for the purpose of obtaining money and property owned and under the custody and control of such financial institutions – specifically mortgage loan proceeds – by means of materially false and fraudulent pretenses, representations, and promises, relative to real estate transactions occurring in the Southern District of Ohio.

2. It was part of the scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises that defendant LAMAR V. LOVE made materially false representations on loan applications and loan-related documents, specifically, loan applications for five home equity lines of credit ("lines of credit") and one 30 year mortgage:

a. On or about July 14, 2006, LAMAR V. LOVE purchased a home located at 3540 Wesson Drive, Columbus, Ohio, for approximately $94,750. The property was purchased through a "short sale" process. While LAMAR V. LOVE intended to own and manage the property, he placed the home in the name of a trust, specifically the Wesson Columbus Land Trust. LOVE named an associate as trustee of the Trust.

b. On or about July 14, 2006, LAMAR V. LOVE transferred the title of 3540 Wesson Drive from the Wesson Columbus Land Trust to LAMAR V. LOVE. The recorded value of the transfer was $151,556. The intent of this transfer was to make the Wesson Drive property look more valuable than the actual purchase price of $94,750.

c. On or about September 18, 2006, LAMAR V. LOVE mortgaged a line of credit on the Wesson Drive property with SkyBank. The total value of the line of credit was $128,000.00.

d. On or about September 20, 2006, LOVE obtained a 30 year mortgage secured by the Wesson Drive property from Countrywide Bank, America's Wholesale Lender, for $98,000.

e. On or about September 22, 2006, LAMAR V. LOVE obtained a mortgaged line of credit on the Wesson Drive property with Huntington Bank, a federally insured financial institution, for $135,000. The collateral value of the property secured for the loan was $151,556 based on the Wesson Drive property as collateral. In order to obtain the mortgage line of credit, LOVE completed a "Personal Line of Credit Application," on which LAMAR V. LOVE made a number of false statements. These false statements included his failure to disclose the previously obtained line of credit from SkyBank on the Wesson Drive property. Specifically, LOVE stated that the "mortgage balance" on the Wesson Drive property was

"$0," when in fact he knew he had previously mortgaged the property to obtain the SkyBank line of credit.

f. LOVE received two other home equity lines of credit through the use of similar material false statements and omissions on loan applications related to the Wesson Drive property. On September 22, 2006, he obtained two lines of credit for $126,500 and $112,000 from First Merit Bank, and WesBanco Bank, respectively.

g. On or about September 29, 2006, LAMAR V. LOVE obtained a line of credit on the Wesson Drive property with Key Bank, a federally insured financial institution. The amount of the line of credit was $127,500. In order to obtain the line of credit, LAMAR V. LOVE completed a "Home Equity Loan Application" on September 25, 2006. This loan application contained a number of false statements, including falsified income and employment information for LAMAR V. LOVE. Moreover, LOVE failed to disclose that he had previously mortgaged the Wesson Drive property with SkyBank, Huntington Bank, First Merit Bank, WesBanco Bank, and a mortgage with Countrywide Bank, just days before, in order to obtain approval for the new line of credit. Instead, LOVE stated that he owned the property "free and clear," indicating no mortgage on the property.

h. LOVE understood that he needed to obtain the mortgage lines of credit and 30 year mortgage from different banks in a short period of time, so that the additional mortgages would not appear on his credit report, or with the state recording agencies. Further, LOVE understood that had the lending institutions known of the other mortgages on the Wesson Drive property, they would not have approved the issuance of the lines of credit.

3.      From on or about July 1, 2006 through on or about September 29, 2006, in the Southern District of Ohio, Defendant LAMAR V. LOVE did knowingly cause the submission of a loan applications, in order to obtain five home equity lines of credit and one 30 year mortgage secured by the Wesson Drive property, that contained materially false and fraudulent statements, representations and promises, including but not limited to LOVE's income and assets, and that LOVE had no other mortgage on the property, when in fact the property was mortgaged several times over, in order to obtain money in the form of a home equity loans and a 30 year mortgage totaling approximately $727,000 from SkyBank, Key Bank, Huntington Bank, First Merit Bank, WesBanco Bank and America's Wholesale Lender, Countrywide Home Loans, all federally insured financial institutions.

In violation of 18 U.S.C. §1344.

CARTER M. STEWART
UNITED STATES ATTORNEY

*/s/ Brenda Shoemaker*

BRENDA SHOEMAKER
FINANCIAL CRIMES CHIEF